UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-24697-KMM

SERGIO NEFTALI MEJIA-DUARTE,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____ /

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct (ECF No. 1 ("Mot.")),[1] filed by Movant Sergio Neftali Mejia-Duarte ("Movant"), wherein Movant attacks the constitutionality of his conviction entered in Southern District of Florida Case No. 1:15-cr-20540-KMM.  Respondent United States of America (the "Government") filed a Response in Opposition (ECF No. 11), to which Movant filed a Reply (ECF No. 17).  In addition, the Government filed a Notice of Supplemental Authority.  (ECF No. 25). The matter has been referred to the undersigned United States Magistrate Judge by the Honorable K. Michael Moore, United States District Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters.  (ECF No. 16).  Having reviewed the Motion,

---

[1]  Citations to documents within the Court's case management and electronic case filing system (CM/ECF) refer to the pagination assigned by CM/ECF to a document (*i.e.*, the page number assigned in the blue text across the top of the PDF) and not to a document's internal pagination.  References to the instant habeas proceeding are notated as "ECF No. __".

Response, Reply, the Government's supplemental authority, the record of the instant habeas proceeding, the record in Movant's underlying criminal case,[2] and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that the Motion to Vacate be **DENIED** as set forth below.

## I.      BACKGROUND

### A.      Relevant Pre-Trial and Trial Proceedings

On July 14, 2015, Movant was charged in an Indictment issued in the Southern District of Florida with conspiracy to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, intending that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959(a)(2), all in violation of 21 U.S.C. § 963.  (CR-ECF No. 1).  The Indictment also contained forfeiture allegations.  The case was transferred to the Clerk's fugitive file pending Movant's arrest.  (CR-ECF Nos. 4, 5).

On August 31, 2017, Movant's now-deceased trial counsel, Louis Casuso, Esq.,[3] entered a permanent appearance in Movant's underlying criminal case.  (CR-ECF No. 7).  Movant was extradited from Honduras to the United States pursuant to a treaty between the two countries.  He made his initial appearance before this Court on October 26, 2017.  (CR-ECF No. 8).  Movant was arraigned on November 1, 2017; he pled not guilty to the sole charge against him.  (CR-ECF No. 11).

On November 7, 2017, the Government filed an Unopposed Motion for *Garcia* Hearing. (CR-ECF No. 12).  Therein, the Government notified the Court of a potential conflict of interest involving Movant's trial counsel, Louis Casuso, and requested a hearing pursuant to *Garcia v.*

---

[2]  References to Movant's underlying criminal case, *United States v. Sergio Neftali Mejia-Duarte*, Case No. 1:15-cr-20540-KMM, are notated as "CR-ECF No. __".
[3]  The Court takes judicial notice of trial counsel Louis Casuso's profile on the Florida Bar website, which reflects that Mr. Casuso is deceased.

*United States*, 517 F.2d 272 (5th Cir. 1975).[4]  The Government stated in its motion that Casuso was representing a cooperating witness who had provided evidence that led to the indictment against Movant.

Then-Chief United States Magistrate Judge Andrea M. Simonton held a status conference regarding trial counsel's conflict on November 8, 2017, followed by two *Garcia* hearings on November 21, 2017, and November 30, 2017.  (CR-ECF Nos. 15, 16, 19).  Both the November 21 and November 30 hearings were attended by Movant and by the cooperating witness, Carlos Arnoldo Lobo ("Lobo"), who Mr. Casuso represented in Southern District of Florida Case No. 1:11-cr-20358-DPG.  An attorney from the Federal Public Defender's Office was also present at the hearings and was appointed to provide counsel to Movant regarding his right to independent and conflict-free counsel.  (CR-ECF Nos. 16, 19).  At the hearing on November 21, 2017, the Government explained its understanding of the nature of the potential conflict:

> the Government's understanding of the conflict is as follows: Mr. Lobo is someone who is seeking to cooperate.  So anything that leads to Mr. Mejia's conviction is something that would be to Mr. Lobo's credit.  Obviously if Mr. Lobo were to testify at trial, that gives him credit.  But there's also the less obvious point that if Mr. Mejia pleads guilty knowing that Mr. Lobo could be a witness against him, Mr. Lobo would also get credit in that circumstance.  And so there is a potential danger as far as the advice that Mr. Mejia might receive because it could be argued that consultation to plead may be for the benefit more of Mr. Lobo than Mr. Mejia.
>
> By the same token, Mr. Lobo is not without some danger because it's possible that Mr. Mejia may decide to cooperate, and it's possible that Mr. Mejia will talk about things that include Mr. Lobo, and it may be things that the Government is not yet aware of or things that are different from what Mr. Lobo might have told the Government and in that way, it's possible that Mr. Mejia would get a benefit, and then Mr. Lobo would be harmed because the Government would view that negatively, the fact that Mr. Lobo hadn't told the Government certain things.

---

[4]  Decisions of the former Fifth Circuit, handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

(CR-ECF No. 100 at 8:13–9).   The Government further represented its position that the circumstances did not constitute an unwaivable conflict or that the Government was seeking Mr. Casuso's termination from representation.  (CR-ECF No. 100 at 10:14–22).

At the November 21 *Garcia* hearing, the Court engaged in a colloquy with Movant in which the Court explained the rights Movant would be waiving, that Lobo had the same rights, and the specific ways in which Casuso's representation of both Movant and Lobo could implicate Movant's right to conflict-free counsel.  (CR-ECF No. 100 at 24–27).   The Court engaged in a similar colloquy with Lobo at the November 30 *Garcia* hearing.[5]   The Court found Movant's waiver of conflict-free counsel knowing and voluntary at the November 21 hearing, and Lobo's waiver of conflict-free counsel knowing and voluntary at the November 30 hearing.  Both Movant and Lobo also executed waivers under Federal Rule of Criminal Procedure 44(c) in English and Spanish.  (CR-ECF Nos. 17, 20).  Prior to formally accepting those waivers, the Court required the Government to file any motion regarding conflict-free counsel by December 11, 2017, with the understanding that the Government need not file a motion if Movant indicated his intention to enter a guilty plea.  (CR-ECF No. 101 at 26).

On December 11, 2017, the Government filed its Motion Pursuant to *Garcia v. United States*, with respect to Casuso's conflict involving Movant and Lobo.  (CR-ECF No. 21).   The Government asserted that Casuso's conflict was a potential conflict, as opposed to an actual conflict, and that the potential conflict could be waived in this case because the Government was unlikely to call Lobo as a witness during Movant's trial.  The next day, on December 12, 2017, based on the Government's representation that Lobo would not be a trial witness, the Court granted the Government's motion and accepted Movant's and Lobo's waivers under Rule 44(c) as knowing

---

[5]  The transcript of the November 21 hearing reflects that Lobo's colloquy was continued until November 30 to accommodate logistical considerations attendant to ensuring his remote appearance at both hearings.

and voluntary waivers of the right to conflict-free counsel.  (CR-ECF No. 23).  Casuso's co-counsel of record in the district court, Eric Padron, entered an appearance on December 20, 2017.  (CR-ECF No. 36).

On December 19, 2017, Casuso filed on behalf of Movant a motion to limit the presentation of evidence at trial to only events after February 27, 2012, the date the extradition treaty between Honduras and the United States was signed.  (CR-ECF No. 31).  Casuso argued that the "doctrine of specialty" limited Movant's prosecution to only events that occurred after the execution of the extradition treaty between the United States and Honduras.  He argued that, as a result, the Government should be limited at trial to presenting evidence of events that occurred after the treaty was signed.  On January 4, 2018, the Court found that while the extradition treaty limited any charges and conviction to a conspiracy that existed no earlier than February 27, 2012, the treaty did not limit the presentation of evidence to only evidence post-dating the treaty.  (CR-ECF No. 53).  Accordingly, though the Jury was instructed on the dates charged in accordance with the treaty, the Government was permitted to present evidence from before the treaty was signed.

On December 29, 2017, the Government filed an additional Notice pursuant to *Garcia v. United States* regarding Casuso.  (CR-ECF No. 46).  The Notice identified a second cooperating witness represented by Casuso.  According to the Government, that second cooperating witness had pled guilty to narcotics trafficking alongside some of Movant's co-conspirators, did not have any interactions with Movant, and did not provide information that led to Movant's indictment.  Thus, the Government represented that it did not believe Casuso's representation of the second cooperating witness presented a conflict of interest that impaired Movant's right to conflict-free

counsel and therefore no waiver was needed.  Movant's Motion to Vacate identifies this individual as Ramiro Caro Pineda, who is also known by the alias "Nolasco." (Mot. at 18).[6]

Movant's case proceeded to a two-day jury trial in Miami, Florida, which commenced on January 8, 2018 and concluded on January 9, 2018.  (CR-ECF Nos. 61, 62).  On Day 1 of the trial, the Government called five witnesses: Warner Broon Benitez Lopez, Ronald Carrion Zalabria, Hector Galezo, Guillermo Lozano, and Oscar David Pulgarin-Ganan.  (CR-ECF No. 61).  The Government continued with the presentation of its case on Day 2 of the trial.  Five witnesses were called: Hector Galezo, Adolfo Rodriguez Barrientos, Jose Lopez, Walter Montejo Merida, and DEA Field Intelligence Manager Justin Miller as an expert witness in international narcotics trafficking.  (CR-ECF Nos. 45, 62).  After the conclusion of Miller's testimony, the Government rested its case and Movant's trial counsel orally moved for judgment of acquittal under Federal Rule of Criminal Procedure 29.  (CR-ECF No. 74 at 318–319).  The Rule 29 motion was denied and the defense rested.  (CR-ECF No. 74 at 319).  The record further reflects that the motion for judgment of acquittal was renewed at the end of the case.  *See* (CR-ECF No. 74 at 321–322).

Each side was afforded 20 minutes to present closing arguments and the Government was afforded 10 minutes for rebuttal.  (CR-ECF No. 74 at 320–321).  The District Court instructed the Jury, which retired to deliberate at 5:00 P.M.  (CR-ECF No. 74 at 355).  After approximately fifty minutes of deliberations, inclusive of time submitting a question to the Court and the Jury's returning to and leaving from the courtroom for reading of the trial transcript, the Jury rendered its Verdict, finding Movant guilty of the sole count charged in the Indictment.  (CR-ECF No. 66).  The Jury further found that the conspiracy involved an unlawful plan to distribute more than 5

---

[6] Movant identifies him as "Nolasco;" the Government's Response identifies the witness with both his name and this nickname ("Caro/Nolasco").

kilograms of a mixture and substance containing a detectable amount of cocaine with the intent to import cocaine into the United States.  (CR-ECF No. 66).

On May 4, 2018, Movant's trial counsel filed a Motion for New Trial, which was denied as untimely at the sentencing hearing on May 21, 2018.  (CR-ECF Nos. 80, 81); (CR-ECF No. 92 at 3).  The District Court noted at the sentencing hearing that Movant's presentence investigation report stated that Movant coordinated shipments of cocaine from at least 2004 until 2015 using go-fast vessels, helicopters, and non-commercial aircraft, and that Movant was responsible for 20,000 kilograms of cocaine.  (CR-ECF No. 92 at 12, 18).  The District Court further noted that multiple witnesses at the trial had testified that Movant was responsible for multiple acts of violence perpetrated in Honduras, including the murder of Jose Pena.  (CR-ECF No. 92 at 12–13).  The District Court overruled Movant's objections to the assessment of enhancements for being a leader and an organizer, for possession of a firearm, for threat of violence, and for intimidating witnesses.

The Parties confirmed that the United States Probation Office had correctly calculated Movant's total offense level as 43 and Movant's criminal history as category I.[7]  (CR-ECF No. 92 at 3, 15).  Considering the presentence investigation report and the factors under 18 U.S.C. § 3553(a), the District Court sentenced Movant to life in prison, to be followed by a 5-year term of supervised release.  (CR-ECF Nos. 86, 87); (CR-ECF No. 92 at 18).

Movant appealed both his conviction and sentence on May 24, 2018.  (CR-ECF No. 88). The appeal was filed by appellate counsel Maruicio L. Aldazabal, Esq.  (CR-ECF No. 88).  The Eleventh Circuit summarized the issues raised on appeal as follows:

> As to the conviction, Mejia-Duarte argues that (1) the District Court admitted evidence whose probative value was substantially outweighed by the risk of unfair

---

[7] Movant's total offense level was calculated as a level 50 but was treated as a level 43, the highest level contemplated under the guidelines manual for determining Movant's guideline range.  (CR-ECF No. 92 at 15).

prejudice, *see* Fed. R. Evid. 403, and (2) the evidence presented at trial was insufficient to support his conviction for post-February 2012 conduct.  As to the sentence, he challenges the District Court's (1) factual finding that he obstructed justice, *see* U.S. Sentencing Guidelines Manual § 3C1.1 (U.S. Sentencing Comm'n 2006), and (2) legal conclusion that his sentence could be enhanced for a variety of conduct that occurred during or before February 2012.

(CR-ECF No. 96 at 4–5) (footnote omitted); *United States v. Mejia-Duarte*, 780 F. App'x 730, 732 (11th Cir. 2019).

Movant's conviction and sentence were both affirmed on appeal. The Mandate of the Eleventh Circuit issued on July 31, 2019.  (CR-ECF No. 96).  Movant sought a Petition for Writ of Certiorari, which was denied by the Supreme Court on November 4, 2019.  (CR-ECF No. 97).

**B.     The Motion to Vacate**

The Motion to Vacate raises eighteen grounds for relief, which the Court summarizes below as follows:

Ground One: Trial counsel Louis Casuso had actual and unwaivable conflicts of interest that he intentionally concealed and which led to him rendering ineffective assistance of counsel under the Sixth Amendment.  (Mot. at 13–23).

Ground Two: Trial counsel was ineffective for failing to object to evidence and testimony regarding the killing of Jose Pena and by failing to put on rebuttal evidence regarding Pena's killing.  (Mot. at 24–29).

Ground Three: Trial counsel was ineffective for failing to consult with a rebuttal drug expert and for failing to cross-examine the Government's drug expert.  (Mot. at 30–32).

Ground Four: Trial counsel was ineffective for failing to make a longer and more fulsome opening statement.  (Mot. at 33).

Ground Five: Trial counsel was ineffective for failing to object to improper questioning and witness answers during the trial.  (Mot. at 34–37).

Ground Six: Trial counsel was ineffective for failing to cross-examine and impeach Government witnesses using evidence produced by the Government.  (Mot. at 38–41).

Ground Seven: Trial counsel was ineffective for failing to cross-examine cooperating Government witnesses about the sentencing benefits they received for cooperating against Movant.  (Mot. at 42–46).

Ground Eight: Trial counsel was ineffective for failing to introduce evidence that would have established Movant never illegally possessed a firearm at the time of his arrest in Honduras.  (Mot. at 47–50).

Ground Nine: Trial counsel rendered ineffective assistance of counsel when he failed to object and move for a mistrial when a Honduran investigative agent and U.S. Government witness commented at the trial on Movant's right to remain silent. (Mot. at 51–52).

Ground Ten: Trial counsel rendered ineffective assistance of counsel when he failed to object and move for a mistrial when the Honduran investigative agent testified that a bribe was paid to obtain a Honduran gun permit.  (Mot. at 53).

Ground Eleven: Trial counsel rendered ineffective assistance of counsel when he failed to object to the admission of evidence of other acts that occurred prior to February 27, 2012, the date of the Honduran-United States Extradition Treaty. (Mot. at 54–57).

Ground Twelve: Trial counsel was ineffective for failing to make a more legally sound motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Government's case-in-chief and at the close of all the evidence.  (Mot. at 58–60).

Ground Thirteen: Trial counsel rendered ineffective assistance of counsel at the trial when he failed to further cross-examine a cooperating Government witness. (Mot. at 61–62).

Ground Fourteen: Trial counsel rendered ineffective assistance of counsel because he failed to present plea negotiations to Movant prior to the expiration of the Government's plea offer.  (Mot. at 63–65).

Ground Fifteen: Trial counsel was ineffective for failing to discuss with Movant his right to testify at the trial.  (Mot. at 66–68).

Ground Sixteen: Trial counsel's closing statement was deficient because it was impermissibly short and failed to articulate a theory of defense, such that it constituted legally ineffective assistance of counsel.  (Mot. at 69–70).

Ground Seventeen: Trial counsel rendered ineffective assistance of counsel when he failed to object to the Government's rebuttal closing argument when it went outside the scope of defense counsel's closing argument.  (Mot. at 71–72).

Ground Eighteen: Trial counsel rendered ineffective assistance of counsel when he failed to file proposed voir dire questions, proposed jury instructions, a sentencing memorandum, character letters, and other evidence for sentencing, and failed to call witnesses and present evidence and argument at sentencing to seek a sentence other than life imprisonment.  (Mot. at 73–74).

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed the sentence to vacate, set aside or correct the sentence if: (i) "the sentence was imposed in violation of the Constitution or laws of the United States," (ii) "the court was without jurisdiction to impose such sentence," (iii) "the sentence was in excess of the maximum authorized by law," or (iv) the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

Relief under § 2255 "may not be a surrogate for a direct appeal."  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).  Rather, a motion under § 2255 is generally "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  *Id.* (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).  If a court finds a claim under § 2255 valid, the court shall "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

The burden of proof is on Movant, not the Government, to establish that relief under § 2255 is appropriate.  *Beeman v. United States*, 871 F.3d 1215, 1221–22 (11th Cir. 2017).  To obtain this relief on collateral review, Movant must "clear a significantly higher hurdle than would exist on direct appeal."  *Frady*, 456 U.S. at 166 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."[8] *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). The rule applies to all claims, including constitutional claims. *Id.* The Supreme Court has explained that, in general, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (first citing *Frady*, 456 U.S. at 167–68; and then citing *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)); *see also McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011) (noting that to overcome a procedural default arising from a claim that could have been, but was not presented on direct appeal, a habeas petitioner must demonstrate: (1) cause for failing to raise the claim and resulting prejudice; or (2) that a miscarriage of justice excuses the procedural default because the petitioner is actually innocent).

## III.   DISCUSSION

At the outset, the Court notes that Movant's seventy-four-page Motion to Vacate, which bears post-conviction counsel Howard Sohn's signature, cites no legal authority for any of the arguments it raises. In many instances, Movant's factual averments in his Motion are contradicted or foreclosed by the record of Movant's underlying criminal case, or contradicted by facts proffered or arguments advanced in support of his Reply. Largely, the Reply advances other facts with no citations at all; some exhibits cited nonetheless failed to support the factual averment for which the exhibit was cited. Alternatively, the Reply references what appear to be unfiled exhibits. *See, e.g.*, (ECF No. 17 at 33–34) (citing Exhibits 52, 53, 54, 84, 101, 104, 105, 113, 115, 116, 117,

---

[8] The Government does not challenge the timeliness of Movant's Motion to Vacate. *See* (ECF No. 11 at 3).

118, 119, 120, 121, 122, 124, 129).[9] This is all to say that the Motion is light on law and untethered from the facts. Notwithstanding, the Court first addresses the Government's argument that some of the grounds for relief raised in the Motion are procedurally barred before turning to the merits of each claim raised.

### A.      Procedural Bar

Movant has raised a claim for violation of his right to conflict-free counsel and seventeen attendant or resulting claims of ineffective assistance of counsel, all in violation of the Sixth Amendment. In its Response, the Government insists that, of those eighteen claims, Grounds One, Two, Five, Nine, Ten, Eleven, and Seventeen are procedurally barred because Movant, who had different appellate counsel on direct appeal (Aldazabal), could have but did not object to the underlying legal and evidentiary errors that occurred in the trial court, Movant did not raise those errors on direct appeal, and therefore Movant's claims in this proceeding based on those errors are procedurally barred now.

As to Grounds Two, Five, Nine, Ten, Eleven, and Seventeen, the thrust of the Government's arguments, in general, is that underlying legal and evidentiary errors not raised at trial, which could have been raised and reviewed on direct appeal, have been "repackaged" or "couched" as ineffective assistance of counsel claims now to seek to permit Movant to raise them here on collateral review. It is well-established that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, *whether or not the petitioner could have raised the claim on direct appeal*." *Massaro*, 538 U.S. at 504 (emphasis added); *see also Lynn*, 365 F.3d at 1234 n.17 (explaining that in *Massaro* the Supreme Court had excepted ineffective

---

[9] None of these exhibits are listed in the sealed Exhibit List (ECF No. 3), which lists Exhibit Nos. 1–29, or are among the thirty-two exhibits attached to the Reply within CM/ECF. Though this Court has reviewed the docket in futile search for the referenced exhibits, the Seventh Circuit's famous quote comes to mind: "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

assistance of counsel claims from the general procedural default rule).  This is because "[t]he evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis."  *Id.* at 505.  As the Supreme Court has explained:

> If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it.  The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.  *See Guinan*, *supra*, at 473 (Easterbrook, J., concurring) ("No matter how odd or deficient trial counsel's performance may seem, that lawyer may have had a reason for acting as he did . . . .  Or it may turn out that counsel's overall performance was sufficient despite a glaring omission . . .").  The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them.

*Id.*; *see also Gordon v. United States*, No. CR 15-00055-WS-N, 2018 WL 6006964, at *5 (S.D. Ala. Sept. 18, 2018), *report and recommendation adopted*, No. CR 1:15-00055-WS-N, 2018 WL 6004677 (S.D. Ala. Nov. 15, 2018) (internal citations omitted) ("Ordinarily, if an available substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding.  However, a claim that would normally be procedurally barred due to the failure to raise it on appeal may be presented in a § 2255 motion when couched as a claim of ineffective assistance of counsel.").

These principles apply to Ground One, in which Movant raises a claim for the violation of his right to conflict-free counsel based on Casuso's various alleged conflicts of interest.  *See Cruz v. United States*, 188 F. App'x 908, 910–11 (11th Cir. 2006) (rejecting argument that claim of conflict free counsel should have been raised in the underlying criminal case because it was known at the time of the *Garcia* hearing and not raised on direct appeal, in light of *Massaro* and because the record in the district court was not developed on the full scope of the claim for meaningful review).  Indeed, the Supreme Court has noted that it is preferable to bring such claims under

13

§ 2255 because "evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced." *Massaro*, 538 U.S. at 505.  Accordingly, the Court finds that Ground One is not procedurally barred and is properly raised on collateral review.

Notwithstanding, "[t]he district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).  If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255.  *See Nyhuis*, 211 F.3d at 1343.  Though Movant is generally not barred from raising errors via ineffective assistance of counsel claims on collateral review, he may not repackage and seek review of errors under the guise of ineffective assistance if the underlying errors and issues have already been actually decided on direct appeal.  *See Obie v. United States*, No. 1:18-CR-0007-WMR-JKL, 2023 WL 5987404, at *6 (N.D. Ga. Feb. 2, 2023), *report and recommendation adopted*, No. 118CR00007WMRJKL, 2023 WL 5501216 (N.D. Ga. Aug. 25, 2023) (finding that ineffective assistance of counsel claim, which related to whether the movant's change of plea was knowing and voluntary, was procedurally barred because the district court's denial of the movant's motion to withdraw his guilty plea was affirmed on direct appeal when the court of appeals found the Rule 11 colloquy was adequate to assure the voluntariness of the movant's change of plea).  With this in mind, the Court finds that Grounds Five (failure to object to improper questioning), Nine (failure to move for a mistrial based on comment about post-arrest silence), Ten (failure to move for a mistrial based on comment about a bribe), and Seventeen (failure to object to scope of the rebuttal closing argument) are not procedurally barred from review

because these are not issues that were decided by the trial court and reviewed on direct appeal that have now been repackaged under the guise of ineffective assistance to seek collateral review.[10]

However, the Court finds that Ground Two is procedurally barred from review.  As noted above, the Eleventh Circuit considered four issues on appeal.  Regarding the first issue decided on appeal, the Eleventh Circuit determined after conducting a Rule 403 analysis that testimony about a drug war between Movant and a rival drug lord (Jose Pena) that led Movant to hire a bodyguard, and during which Pena turned up dead, was relevant to the Government's case and not prejudicial to Movant.  *See Mejia-Duarte*, 780 F. App'x at 733.  Thus, to the extent Movant claims in Ground Two that Casuso's performance was constitutionally deficient because Casuso failed to object to evidence and testimony regarding Pena's killing and because he failed to put on rebuttal evidence regarding the "true" cause of Pena's killing, (Mot. at 24–29), the Court finds that the issue in Ground Two has already been decided by the Eleventh Circuit and has impermissibly been repackaged here.  *See Nyhuis*, 211 F.3d at 1343.  Accordingly, the Court finds that Ground Two is procedurally barred and that it may be denied on that basis.

The Court further finds that Ground Eleven is procedurally barred from review, though this is a somewhat closer question.  As summarized, Movant alleges in Ground Eleven that trial counsel rendered ineffective assistance of counsel when he failed to object to the admission of evidence of other acts that occurred prior to February 27, 2012, the date of the Honduran-United States Extradition Treaty.  Movant's arguments advanced in Ground Eleven are difficult to follow.  He seems to challenge Casuso's alleged failure to object to pre-2012 evidence that the trial court determined was Rule 404(b) evidence when denying Casuso's Rule 29 motion, to which Movant

---

[10]  Indeed, each of Grounds Two through Eighteen alleges deficient acts or Casuso's omission and asserts that constitutionally effective counsel would not have acted (or omitted to act) in the ways that Casuso acted in Movant's underlying criminal case.

now raises a Rule 403 objection, though it is difficult to tell whether Movant's challenge is to particular pre-2012 evidence or to all the pre-2012 evidence.  Though Movant did not raise this *precise* issue on direct appeal, the argument in Ground Eleven is foreclosed because it has been implicitly decided on direct review in the context of three of the four issues Movant raised on appeal.  First, as to at least some of the pre-2012 evidence, and as discussed above with respect to Ground Two and Movant's first issue on appeal, the Eleventh Circuit considered and rejected Movant's Rule 403 challenge to testimony regarding the pre-2012 killing of Jose Pena.  Though the Eleventh Circuit did not address a challenge to that testimony on the ground that it related to events from before 2012, the Eleventh Circuit nonetheless found that the testimony in question was not inadmissible under Rule 403.  Second, and as to the second issue Movant raised on direct appeal, the Eleventh Circuit found that sufficient evidence of post-2012 involvement in the conspiracy supported Movant's conviction.  *Mejia-Duarte*, 780 F. App'x at 734–35.  And third, regarding the fourth issue Movant raised on appeal, the Eleventh Circuit found that the trial court did not err when it accounted for conduct beyond the scope of the extradition order (*i.e.*, pre-2012 conduct) in determining the enhancements to apply to Movant's sentence.  *Id.* at 736–37.  For all these reasons, the Court finds that the arguments raised in Ground Eleven have already been decided against Movant on direct review and thus they are procedurally barred here on collateral review.

Accordingly, the Court finds that Movant's claims in Grounds One, Five, Nine, Ten, and Seventeen are not procedurally barred.  However, the Court finds that Movant's claims in Ground Two and Eleven are procedurally barred and may be denied on that basis.  Notwithstanding, the Court assesses the merits of each of the Grounds raised in the Motion.

**B.      Actual Innocence**

A quick word on actual innocence before turning to the merits of Movant's claims. Throughout the Motion, Movant argues in general fashion that he is actually innocent of the offense for which he was convicted.  The argument takes greater focus in the Reply, where Movant asserts within the context of Ground Fifteen that if Casuso had not been constitutionally ineffective, Movant could have argued a withdrawal defense at trial: that he had withdrawn from the conspiracy in either late 2008 or early 2009, and thus before 2012 and the time period charged in the Indictment, in anticipation of the birth of his daughter.

Actual innocence is an exception to the procedural bar to review and is exceedingly narrow in scope as it concerns a habeas petitioner's "actual" innocence, rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  "Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by [a movant's] failure timely to file his § 2255 motion."  *United States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005). Under the exception, "a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself."  *McKay*, 657 F.3d at 1196.  "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence."  *Id.* (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (11th Cir. 1995)).

Here, the Government does not challenge the timeliness of the Motion.  Grounds Two and Eleven, which have been found procedurally barred, are not procedurally barred because they were not raised on direct review; they are procedurally barred because they were raised—and rejected—on direct review.  The actual innocence exception is not a freestanding claim to be raised

here.  And as best the Court can tell, Movant's claim of actual innocence is raised within the context of Ground Fifteen (failure to advise Movant of his right to testify at trial).  The Government has not challenged Ground Fifteen as procedurally defaulted and the Court has not made such a finding.  That claim fails on the merits for the reasons discussed below.

The Court now turns to the merits of Movant's claims.

### C.      Right to Conflict-Free Counsel

Movant asserts in Ground One that Casuso had actual and unwaivable conflicts of interest that he intentionally concealed, in violation of Movant's right to conflict-free counsel.  (Mot. at 13–23).

The Sixth Amendment guarantees Movant the right "to have the Assistance of Counsel for his defence."  U.S. Const. amend VI.  It is well-established that "[a] criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely."  *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993).  However, the right to conflict-free counsel may be waived so long as the waiver is voluntary, knowing, and intelligent.  *See Garcia v. United States*, 517 F.2d 272, 277–78 (5th Cir. 1975).  In cases of potential conflict, district courts are directed to conduct a colloquy with a defendant akin to the plea colloquy under Federal Rule of Criminal Procedure 11.  *Id.* at 278.  As the Eleventh Circuit has summarized:

> Absent such a waiver of the sixth amendment right, a defendant is entitled to representation free of actual conflict.  A speculative or hypothetical conflict, however, does not violate the Constitution.  To establish the "predicate" for a constitutional violation a defendant must be able to show that his lawyer "actively represented conflicting interests . . . ."  Not only must a defendant demonstrate actual conflict, but he must also show that the actual conflict "had an adverse effect upon his lawyer's representation."  Once the defendant shows both actual conflict and adverse effect, "prejudice is presumed and the defendant is entitled to relief."

> Although the cases tend to interchange "actual conflict" and "adverse effect," under either rubric, precedent requires a defendant to point to "specific instances in the record to suggest an actual conflict or impairment of their interest." Furthermore, a defendant must show that his lawyer made a choice between plausible courses of action, such as presenting arguments or evidence helpful to one client but harmful to the other.

*United States v. Khoury*, 901 F.2d 948, 968 (11th Cir. 1990) (internal citations omitted).

As noted above, the Motion to Vacate asserts that unwaivable conflicts of interest existed based on Casuso's attorney-client relationship with Carlos Arnoldo Lobo; and involvement with, speculated association with, and/or representation of Ramiro Caro Pineda, Oscar David Pulgarin-Ganan, Victor Mosquera Perez, and Warner Broon Benitez Lopez. Meaningfully missing from Movant's claims with respect to these potential conflicts is any identification of counsel's choosing a course of action favorable to any of the putative other clients to the detriment of Movant, beyond Movant's conclusory assertion that all of Casuso's decisions were to his detriment and in favor of these other putative clients. Each are examined in turn below.

### 1.      Carlos Arnoldo Lobo (Lobo)

Movant's claim in Ground One based on Casuso's contemporaneous representation of Lobo fails for three reasons: because Movant waived his right to conflict-free counsel with respect to Lobo; no actual conflict materialized, because Lobo was neither identified as a witness nor called to testify against Movant; and the evidence advanced by Movant purportedly to show Casuso labored under a conflict in favor of Lobo fails to support his claim.

On November 21, 2017, the Court conducted a *Garcia* colloquy with Movant. During that colloquy, the Court: (i) ascertained Movant's educational attainment and competency to proceed, (ii) explained the charges against Movant and the potential maximum sentences and penalties; (iii) advised Movant of his right to conflict-free counsel; and (iv) explained the ways in which Casuso's representation of Lobo created a potential conflict of interest that could adversely affect

Movant.  The Court explained that the potential conflict could prevent Casuso from conducting an independent investigation or using information gathered from Lobo; create conflicts in Casuso's ability to negotiate a plea deal on behalf of Movant and advise Movant whether to take or reject a plea deal while also representing Lobo in seeking a Rule 35 sentence reduction; prevent Casuso from cross-examining Lobo at trial; bar Casuso from arguing at sentencing that Movant was not as culpable as Lobo; and prevent Casuso from using at sentencing any information that Movant had that would be harmful to Lobo.  (CR-ECF No. 100 at 21–27).

The Court afforded Movant the opportunity to discuss this potential conflict with an attorney from the Federal Public Defender's Office, outside the presence of Casuso.  (CR-ECF No. 100 at 27–29).  Movant confirmed that that attorney had explained his right to conflict-free counsel, that Movant understood his right, and that Movant still wished for Casuso to represent him.  (CR-ECF No. 100 at 30:4–15).  The Court re-explained the potential adverse consequences of Casuso's potential conflict, and Movant confirmed that he understood each consequence.  (CR-ECF No. 100 at 30–31).  The Court also asked Movant to articulate why he wanted Casuso to continue to represent him and to explain Movant's understanding of Casuso's conflict arising from representing both Movant and Lobo.  Movant did so.  (CR-ECF No. 100 at 42–43).  Movant also executed a written waiver of his right to conflict-free counsel in both English and Spanish, which was made part of the record.  (CR-ECF No. 17).  Accordingly, the Court found that the waiver was knowing, intelligent, and voluntary.  The Court conducted a similar colloquy with Lobo on November 30, 2017, and only accepted both Movant's and Lobo's waivers upon the Government's representation that Lobo would not be offered as a witness at Movant's trial.  (CR-ECF No. 100 at 45); (CR-ECF Nos. 21, 22, 101).

The *Garcia* hearing as to Movant was adequate.  *See McCorkle v. United States*, 325 F. App'x 804, 808 (11th Cir. 2009) (finding, for a motion to vacate under § 2255, that the *Garcia* hearing conducted was adequate as to attorney's possible participation in the criminal activity, where the court "(1) explained petitioner's right to conflict-free counsel; (2) elicited testimony concerning the facts and circumstance of the case; (3) discussed the rule prohibiting counsel from assisting in fraudulent conduct; (4) explained the dangers of counsel having a conflict of interest with a client; and (5) explained petitioner's right to obtain or talk with other counsel").  Thus, Movant knowingly and voluntarily waived his right to conflict-free counsel.  "A determination that defendants have waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflicts of interest." *Rodriguez*, 982 F.2d at 477 (citing *Garcia*, 517 F.2d at 277).

Movant asserts in his Motion to Vacate that he "did not understand the significance and implications of Casuso's unwaivable conflict of interest" because he was "a Honduran citizen, who did not speak English, have any understanding of the American legal system and who had only been in [the United States] for a matter of weeks."  (Mot. at 15).  However, the record expressly reflects that Movant was aided at the *Garcia* hearing on November 21 by the assistance of the Spanish interpreter, that the Court had appointed an attorney from the Office of the Federal Public Defender on a limited basis to provide independent counsel to Movant regarding the potential conflict of interest, and that Movant's waiver form was executed in both English and Spanish.

Accordingly, Movant's claim based on Casuso's contemporaneous representation of Lobo fails because it has been waived.

Ground One of the Motion to Vacate additionally fails because Movant has identified no unwaivable conflict arising from Casuso's representation of both Lobo and Movant.  Lobo was not listed as a Government witness for trial.  (CR-ECF No. 49).  Nor was Lobo called as a witness at Movant's trial.  Movant's Motion suggests that this was because "AUSA Norkin negotiated and offered Casuso a chance to remain on the case and not ask for [Casuso's] removal."  (Mot. at 16).  His suggestion is squarely refuted by the evidence he attached to the Motion.  Indeed, in response to an email request by Government counsel to advise of his position on the Government's ability to call Lobo as a witness against Movant, Casuso declined: Casuso's response reveals that he expressly told Government counsel that the Government should consider whether to call Lobo as a witness "without taking into consideration whether or not [Casuso] stay[s]."  (ECF No. 3 at 338).

### 2.   Oscar David Pulgarin-Ganan (Pulgarin) and Victor Mosquera Perez (Mosquera)

Both Pulgarin and Mosquera testified against Movant at trial.  Neither were represented by Casuso.  The Motion alleges, "[b]ased on information and belief, subject to a further request for discovery and the issuance of subpoenas, [that] Casuso met with [David Pulgarin-Ganan and Victor Alfonso Mosquera Perez] at FDC Miami on a number of occasions, and consulted with and represented them in seeking among other things, Rule 35 sentence reductions."  (Mot. at 18).  The Motion purports to explain the only connection that existed between Pulgarin and Casuso, or between Mosquera and Casuso: Movant alleges that Caro/Nolasco had referred those individuals to Casuso to be potential clients and Pulgarin and Mosquera later testified against Movant at trial.

The assertion that Caro/Nolasco referred Pulgarin and Mosquera to Casuso is based entirely on speculation.  Movant's conclusory assertions do not entitle him to discovery on this issue.  *See Prada v. United States*, 692 F. App'x 572, 575 (11th Cir. 2017) (finding no abuse of discretion for denial of discovery because the movant had not shown good cause where, in part,

the movant had advanced conclusory allegations regarding the relevance of requested discovery and had not suggested what evidence would come to light from the discovery).  These conclusory allegations are simply not sufficient to establish that any attorney-client relationship in-fact existed, let alone one that created an actual conflict of interest with respect to Pulgarin and Mosquera.  *See Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001) (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)) (explaining that, to establish a violation of the right to conflict-free counsel, a movant must point to "specific instances in the record to suggest an actual conflict or impairment of their interests" and must "make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative [courses] of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other").

Accordingly, Movant has not satisfied his burden of showing that there was an actual conflict of interest involving Mosquera and Pulgarin.

### 3.      Ramiro Caro Pineda (Caro/Nolasco)

Movant's claim based on Casuso's representation of Caro/Nolasco also fails on a variety of grounds.  The Motion asserts that the Government identified Casuso's potential conflict of interest arising from his representation of Caro/Nolasco when the Government filed its December 29, 2017 *Garcia* Notice.  (CR-ECF No. 46).  According to Movant, Caro/Nolasco referred potential clients such as Pulgarin and Mosquera to Casuso, who later became witnesses against Movant at Movant's trial.  Movant also asserts that Caro/Nolasco was listed as a trial witness. (Mot. at 18).  Movant claims that Caro/Nolasco cooperated and testified against Movant.  (Mot. at 19).

Movant's assertions are contradicted by the record.  The Government acknowledges that Casuso represented Caro/Nolasco.  However, Movant's claim that Caro/Nolasco was listed as a trial witness is incorrect.  As noted earlier, the Government's December 29, 2017 *Garcia* Notice (CR-ECF No. 46), which relates to Caro/Nolasco, expressly stated that the Government would *not* call the second cooperating witness represented by Casuso (Caro/Nolasco) at Movant's trial.  The Government further represented that Caro/Nolasco had not provided information that led to Movant's indictment.  Moreover, Caro/Nolasco did not, in fact, testify at Movant's trial as claimed in Movant's Motion.  (CR-ECF Nos. 61, 62).

Movant has not advanced any facts showing that Casuso made a choice between possible alternative courses of action that pitted his representation of Movant against his representation of Caro/Nolasco.  For this reason, Movant has not shown an actual conflict involving Caro/Nolasco.

### 4.     Warner Broon Benitez Lopez (Lopez)

Movant asserts in his Motion that Casuso was operating under an actual conflict of interest arising from Casuso's representation of Lopez, which Casuso purportedly concealed from Movant, the Court, and the Government.  Movant avers that Casuso represented Lopez in 2017 in efforts to obtain a Rule 35 sentence reduction for Lopez.  According to Movant, Casuso visited Lopez at FDC Miami on five occasions and thus Casuso was Lopez's attorney; Lopez later testified against Movant during Day 1 of Movant's trial.

Movant has attached as evidence of Casuso's relationship with Lopez pictures of computer screens displaying PDF documents that purport to show that Casuso sought permission to visit Lopez at FDC Miami on five occasions, between September and December of 2017.  (ECF No. 3 at 127–131) (Exhibits 12 through 16).  Specifically, the documents purport to show that four legal visits with Lopez occurred on September 5, September 18, October 6, and October 12, before

Movant arrived in the United States and made his initial appearance on October 26, and that one legal visit with Lopez occurred afterward on December 11, 2017. Three of the documents requesting visits with Lopez (Exhibits 13, 14, and 15) contain no indicia associating those visits with Casuso. One of the documents (Exhibit 12) bears only Casuso's address of record in the underlying case. Only one document (Exhibit 16) purports to show that Casuso sought to meet with Lopez, on December 11, 2017.

Assuming that all five documents relate to Casuso seeking legal visits with Lopez at FDC Miami, and also assuming that an attorney-client relationship existed between Casuso and Lopez, Movant has not established any adverse effect from the alleged conflict of interest. The record of the trial proceedings reflects that Casuso did not cross-examine Lopez at Movant's trial; co-counsel Padron conducted the cross-examination. Moreover, Movant has identified in his Motion no facts showing that Casuso made a choice between possible alternative courses of action that pitted his representation of Movant against his representation of Lopez, assuming an attorney-client relationship existed. For example, though Movant avers in his Motion that Casuso was representing Lopez "for among other things, his efforts to apparently seek and obtain a Rule 35 sentence reduction for Lopez," (Mot. at 19), Movant has neither attested to in his Motion or identified through attached exhibits to the Motion any case in the Southern District of Florida or elsewhere showing Casuso's efforts to seek a sentence reduction for Lopez. In fact, while the Motion claims that Casuso represented Lopez, the Reply says otherwise, stating that Lopez was continuously represented by a different attorney in conjunction with post-sentencing cooperation: "Carlos Leon was and has been representing Lopez for all post-sentencing cooperation matters from September 4, 2017 through the present date. (Ex. 40)."[11] (ECF No. 17 at 17).

---

[11]  The Court is unable to locate Exhibit 40 in the record.

Accordingly, Movant has not satisfied his burden of showing that Casuso's involvement with Lopez violated Movant's right to conflict-free counsel.

***

For all these reasons, the District Court should **DENY** the Motion to Vacate with respect to Ground One.[12]

### D.   Right to Effective Assistance of Counsel

The Court now turns to Movant's claims asserted in Grounds Two through Eighteen, in which Movant contends that Casuso rendered legally ineffective assistance of counsel.

#### 1.   Legal Principles

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defence." U.S. Const. amend. VI. To obtain habeas relief on a claim of ineffective assistance of counsel, a petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts review counsel's performance in a highly deferential manner under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. For the second prong, "*Strickland* places the burden on the defendant to

---

[12] Movant's Reply, signed and filed by Attorney Howard A. Sohn, contains a section within Ground One titled "Casuso's Additional Improprieties, Misconduct and Criminal Conduct." (ECF No. 17 at 9). Ostensibly advanced to impeach Casuso's affidavit, which was attached to the Government's Response but has not been considered by this Court, the Reply lodges various accusations against Casuso that are salacious and not apparently related to Movant's underlying criminal case or this habeas proceeding. Beyond asserting that Casuso's affidavit (ECF No. 11-1) is perjurious, the Reply accuses Casuso of: (i) engaging in criminal misconduct by selling information to inmates at FDC Miami so that those inmates could obtain Rule 35 sentence reductions; (ii) disclosing the existence of sealed court documents to Movant's Honduran attorney; (iii) providing the Honduran attorney with the Government's discovery and disclosures in violation of a protective order; and (iv) acting as a U.S. Government agent by assisting in investigating and arresting Movant. (ECF No. 17 at 9–13). The Reply advances factual assertions in support of these arguments without citation to evidence or by citing to unfiled evidence. The Rules Regulating the Florida Bar prohibit a lawyer from disparaging another lawyer, knowingly or through callous indifference. Rule 4-8.4(d). Sohn's inclusion of these accusations without apparent relevance to this proceeding or with factual basis trespasses on this Rule.

show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (quoting *Strickland*, 466 U.S. at 694).

A court deciding an ineffective assistance of counsel claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. A convicted defendant making such a claim must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* To determine whether counsel's performance was deficient, the court must, with much deference, consider whether counsel's assistance was reasonable considering all the circumstances. *Id.* at 688. Moreover, the court must avoid the "distorting effects of hindsight" and assess the reasonableness of counsel's performance from his perspective at the time of the challenged conduct. *Id.* at 689. In this regard, "strategic choices" made by counsel after thoroughly investigating the relevant law and facts are "virtually unchallengeable." *Id.* at 690. "Where the record is incomplete or unclear about counsel's actions," the court "will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (internal quotation marks and alterations omitted).

Regarding the prejudice requirement, the Supreme Court observed that an unreasonable error by counsel does not justify setting aside a criminal judgment when the "error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Thus, absent special circumstances, the defendant must affirmatively prove prejudice resulting from his counsel's deficient performance. *Id.* at 692–93. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Establishing *Strickland*'s deficient-performance and prejudice elements "is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).  If a petitioner makes an insufficient showing on either element, the court need not address the other element.  *See Strickland*, 466 U.S. at 697.

### 2.      Ground Two – Evidence Regarding Pena's Killing

In addition to being procedurally barred, the Court finds that Ground Two fails on the merits.  In Ground Two, Movant alleges that Casuso rendered legally ineffective assistance of counsel by failing to object to evidence and testimony regarding the killing of Jose Pena and by failing to put on rebuttal evidence regarding the "true" cause of Pena's killing.  (Mot. at 24–29).

Movant's argument here is that Casuso (laboring under the actual conflicts of interest noted above) was on notice from the Government's discovery and motion *in limine* that the Government intended to introduce evidence that Movant and Pena were rival drug dealers and that Movant had directed Pena's killing, but Casuso failed to investigate Pena's death and failed to object to this testimony elicited at trial.  Movant asserts that "[t]his uncharged crime was highly prejudicial and inadmissible character evidence."  (Mot. at 26).  He cites to specific testimony from the trial that he claims prejudiced him, argues that Casuso would have discovered that Movant had no involvement in Pena's death if Casuso had investigated the matter and obtained documentation from Salvadoran authorities, and notes that this evidence resulted in a 2-level enhancement to Movant's guideline calculation under the U.S. Sentencing Guidelines.

Movant's claim in Ground Two fails because Movant is unable to establish prejudice.  The Eleventh Circuit addressed this issue on direct appeal when it assessed Movant's objection to the

admission of evidence at trial regarding Pena's killing under Rule 403.  On appeal, the Eleventh Circuit observed that Movant was making "a mountain out of a molehill," ultimately finding that "the risk of unfair prejudice was almost non-existent."  *Mejia-Duarte*, 780 F. App'x at 733, 734. Specifically, the Eleventh Circuit wrote:

> Mejia-Duarte cannot show that any such risk was present—something he implicitly admits and something that our review of the record confirms—let alone that it substantially outweighed the evidence's probative value.  Mejia-Duarte's theory is that admission of this testimony created risk that the jury would convict him for a bad act not alleged in the indictment—namely, the rival's murder.  But this theory is belied by Mejia-Duarte's own brief.  Even if the jury could infer from this testimony that the rival was murdered, it could not reasonably infer that Mejia-Duarte had anything to do with that murder.  Only one of the three witnesses refers to a "killing," and nothing about the evidence connects Mejia-Duarte to the death. *So there was no real risk that the jury convicted Mejia-Duarte on this basis, instead of for the crime for which he was indicted and tried*.

*Id.* at 733–34 (footnote omitted) (emphasis added).

The Eleventh Circuit has already found based on the record at trial that the Jury could not have reasonably inferred Movant had anything to do with Pena's killing and that there was no real risk that Movant was convicted because of Pena's killing.  Having found that Movant was not prejudiced by the evidence and testimony that Movant claims Casuso failed to investigate and rebut, Movant has not established that the result of the proceeding would have been different if Casuso and Padron had more thoroughly investigated and challenged the Government's evidence regarding Pena's death.

Moreover, Movant has not established deficient performance or prejudice to the extent evidence regarding the killing of Pena was factored into Movant's sentencing guidelines calculation.  Movant claims that he was assessed a two-level enhancement to his guidelines calculation, under U.S.S.G. § 2D1.1(b)(2), as result of the killing.  Regarding deficient performance, the record affirmatively establishes that Casuso filed objections to the application of

this enhancement in Movant's presentence investigation report prior to the sentencing hearing, and that Casuso objected to the application of the enhancement at the sentencing hearing. As to prejudice, and as noted by the Government, there was other evidence of guns and violence presented at the trial sufficient to support the District Court's application of this sentencing enhancement. Further, and more simply, if Movant had not received the two-level enhancement complained of, his total offense level would have been a level 48 instead of a level 50—Movant's total offense level *still* would have been treated as a level 43 and his guideline range *still* would have been life imprisonment. Movant's assertion to the contrary—that the sentencing guidelines are advisory, that the District Court had the "absolute discretion" to sentence him to a non-life sentence, and that the District Court would have sentenced Movant to a term of years—is conclusory and does not establish prejudice. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (finding no prejudice where the movant advanced conclusory allegations that the trial counsel had deficiently failed to object to drug amounts at sentencing).

Therefore, the District Court should **DENY** the Motion with respect to Ground Two.

### 3. Ground Three – Use of a Rebuttal Expert

In Ground Three, Movant alleges that Casuso rendered legally ineffective counsel (i) by failing to cross-examine the Government's narcotics expert, DEA Field Intelligence Manager Jason Miller, regarding the importation of cocaine into the United States, and (ii) "more importantly," by failing to consult with and retain a rebuttal drug expert. (Mot. at 30–32). According to Movant, Casuso's failure to object to Miller's opinion that the cocaine at issue in this case was intended for importation into the United States and failure to retain and call a defense rebuttal expert resulted in an essential element of the offense being unchallenged at trial. Movant's post-conviction counsel has retained, for purposes of this habeas proceeding, an expert who would

now offer the opinion that the cocaine at issue in Movant's underlying criminal case was never intended for importation into the United States.

The Government asserts in its Response that in narcotics importation cases it is the norm for a defendant not to present a rebuttal expert on drug trafficking, and thus Movant has failed to satisfy *Strickland*'s deficiency prong. The Government cites as examples three cases from this District in which rebuttal experts were not called by the defense. Regarding Casuso's alleged failure to cross-examine Miller, the Government responds that each of the cooperating witnesses testified as to their awareness that the narcotics being trafficked were destined for the United States, and thus Movant is unable to satisfy *Strickland*'s prejudice prong. The Government asserts that it was instead Casuso's strategy to focus on cross-examining the cooperating witnesses and to downplay the importance of Miller's testimony by not calling attention to it through cross-examination.

First, Movant has not established that Casuso's decision to forego cross-examining Miller was the result of neglect as opposed to trial strategy. *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)) ("The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney.'"). The Eleventh Circuit has found ineffective assistance "where counsel failed to impeach the key prosecution witness with prior inconsistent testimony where the earlier testimony was much more favorable to the defendant." *Id.* But ineffective assistance of counsel "will not be found merely because 'other testimony might have been elicited from those who testified.'" *Id.* at 1220 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995)). Here, there has been no showing that Miller was a key prosecution witness who was not impeached with prior inconsistent testimony more favorable to Movant. Rather, and for the same reasons discussed further below,

Movant has not established *Strickland* prejudice resulting from Casuso's decision to forego cross-examining Miller.

Second, Movant has not established that failing to consult and retain a rebuttal narcotics expert was the result of legally ineffective assistance of counsel.  Movant has identified no case standing for the proposition that trial counsel's performance falls below an objective standard of reasonableness as a result of a failure to retain and call a rebuttal expert to opine on the importation of cocaine into the United States in a narcotics trafficking case.

Thus, Movant has not alleged facts sufficient to show deficient performance.

Moreover, Movant has failed to establish prejudice.  As the Government notes, Miller was not the only Government witness who offered testimony on the importation of cocaine into the United States.  The cooperating Government witnesses' testimony separately supported inferences that the cocaine at issue had been trafficked into the United States.  As the Government notes in its Notice of Supplemental Authority (ECF No. 25), Movant's knowledge of importation could be properly established through circumstantial evidence, such as the testimony of the Government's cooperating witnesses.  *United States v. Benavidez*, No. 20-10986, 2021 WL 2026813 (11th Cir. May 21, 2021) ("Although the government did not present direct evidence of Castaneda's knowledge, it presented sufficient circumstantial evidence from which a reasonable jury could conclude Castaneda knew or had reasonable cause to believe the cocaine would be unlawfully imported into the United States.").

Sufficient circumstantial evidence was presented here.  For example, Lopez testified that Movant had been involved with Lopez in sending cocaine from Colombia to Central America; that Lopez kept track of cocaine shipments (counting kilograms and keeping account of money); that Lopez passed off the cocaine to Movant; that the drugs were then trafficked by cartels in Sinaloa,

Mexico into the United States; that Lopez knew this because the drug proceeds Lopez received were in U.S. Dollars; that Lopez and Movant squared accounts with each other in U.S. Dollars; and that Lopez traveled to Sinaloa, observed operations there, and was told about the use of drug mules and trucks to transfer drugs into the United States.  (CR-ECF No. 73 at 12–18, 31–35).  Ronald Carrion Zalabria testified that his understanding of what would happen to the drugs sent from Colombia to Honduras was that they would be sold to a buyer in either Guatemala or Mexico "so that [they] could be sent and sold to the United States."  (CR-ECF No. 73 at 60).  Zalabria testified that he knew this because the volume of drugs being trafficked was too large to be used or consumed in Honduras or Guatemala, and because U.S. Dollars were used for the transactions.  (CR-ECF No. 73 at 60).  Pulgarin testified that he trafficked cocaine with Movant; that payments were made in U.S. Dollars; that the price of a kilogram of cocaine increased relative in distance to the United States; and that he would deliver cocaine to a group called Lorenzana who worked with Movant and who would move the cocaine to drug cartels in Mexico that in turn moved the cocaine to the U.S. border.  (CR-ECF No. 73 at 153, 158–159).  Adolfo Rodriguez Barrientos likewise testified that the cocaine he trafficked with Movant ultimately ended up in the United States and that payments were in U.S. Dollars.  (CR-ECF No. 74 at 201, 207, 209).  And Walter Montejo Merida testified that he sold cocaine in Guatemala to individuals in Mexico who lived at the border with the United States; and that he (Merida) in turn had purchased that cocaine from individuals employed by Movant.  (CR-ECF No. 74 at 274–279).  Each of these witnesses was subject to cross-examination by Casuso or Padron.

The Court thus finds that Movant has not established deficient performance or prejudice. Accordingly, the District Court should **DENY** the Motion with respect to Ground Three.

### 4.    Ground Four – Defense Opening Statement

In Ground Four, Movant alleges that Casuso rendered legally ineffective counsel by failing to make a longer and more fulsome opening statement.  (Mot. at 33).  Movant asserts that Casuso's opening statement was less than two transcript pages in length, did not articulate a defense theory, and reflects that Casuso failed to review the evidence in the case.  Movant also notes that Casuso incorrectly asserted that evidence would not be shown to the jury that was later shown to the jury.

The District Court may dispose of Ground Four with short shrift because Movant has not shown deficient performance or prejudice.  The Eleventh Circuit has expressly held that even the decision "not to make an opening statement falls within the realm of a strategy decision that occurs frequently enough to make it improper to say the strategy was ill chosen." *United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982).  The Court is hard-pressed to find that Casuso's opening statement, which was two pages of trial transcript in length when compared to the Government's four-page opening statement, was the product of neglect rather than trial strategy.  Rather, Casuso's opening statement communicated the defense's trial strategy: the Government's evidence would largely consist of the testimony of cooperating witnesses; he suggested that those witnesses should not be found credible; and consistent with Casuso's pre-trial motion *in limine* and dates associated with the extradition treaty, Casuso implored the Jury to focus on the dates of the Government's evidence.  The Court finds no deficient performance.

Moreover, Movant has identified no prejudice.  That is, Movant advances no evidence or argument establishing a reasonable probability that the outcome of his criminal proceeding would have been different had Casuso made a longer opening statement than the one he made.

Accordingly, the District Court should **DENY** the Motion with respect to Ground Four.

###### 5.      Ground Five – Failure to Object to Questioning

In Ground Five, Movant alleges that Casuso rendered legally ineffective assistance of counsel by failing to object to improper questioning and witness answers during the trial.  (Mot. at 34–37).  He asserts that the trial transcripts reflect at least 40 improper and inadmissible questions and answers elicited from Government witnesses without defense objection, which allowed the Government to lead witnesses, elicit non-responsive answers, and provide speculative and self-serving testimony.  According to Movant, the questions and answers that should have been objected to went to issues central to the case, including trafficking of cocaine northward into the United States.

Ground Five is without merit.  Movant cites to pages of the trial transcripts in which witnesses' testimony included phrases and terms such as "probably," "my understanding," "I guess," "I believe," "I understood," "I don't think," "supposedly," "perhaps," and "I heard."  *See* (Mot. at 34).  Movant claims without citation to any Federal Rule of Evidence or caselaw that that testimony was necessarily inadmissible and prejudicial.  As examples of specific testimony, Movant first takes issue with a line of questioning regarding the importation of narcotics, in which one of the Government's witnesses, Guillermo Lozano, was asked about his understanding of what happened to the narcotics after he had dropped them off.  (Mot. at 35) (quoting (CR-ECF No. 73 at 106)).  In response, Lozano testified regarding his own (*i.e.*, personal) understanding.

As a second example, Movant avers in his Motion:

> Additionally, during Guillermo Lozano's direct examination, in an effort to prejudice the jury and secure a conviction, the Government, without any defense objection, inquired of Lozano as follows
>
> > Q: Do you know why he [Neftali] had bodyguards
> > A:  Well, *I guess* he was worried (DE 73 at 117).

(Mot. at 35) (alterations and emphasis in original).  The Motion skips citation to the follow-up questions, which revealed Lozano's testimony was based on personal knowledge.  The Court reproduces the full line of questioning from the transcript:

> Q. Do you know why Compa had so many bodyguards?  Did he ever discuss that with you?
> A. Well, I guess he was worried.
> **Q. Don't guess.**
> A. He was worried about his security.  He had an enemy that he was worried.  I don't know his name or what was the problem between them.  But that was the reason **he told me** that he had to use security around him.
> Q. So he told you that he had this enemy; is that correct?
> A. Yes, that's correct

(CR-ECF No. 73 at 117:18–118:2) (emphasis added).

As a third example, Movant takes issue with Pulgarin referencing Movant as "the well-known Neftali."  (Mot. at 36) (quoting (CR-ECF No. 73 at 147:6–9)).  The assertion that this testimony was improper and inadmissible is, again, not supported by reference to any Federal Rule of Evidence or caselaw.  As a fourth example, Movant complains of Pulgarin's testimony about matters within his personal knowledge.  (Mot. at 36) (quoting (CR-ECF No. 74 at 175)).

The failure to raise unspecified objections to the foregoing questions and testimony does not establish deficient performance.  Accordingly, the District Court should **DENY** the Motion with respect to Ground Five.

### 6.     Ground Six – Use of Government Discovery in Cross-Examination

In Ground Six, Movant claims his trial counsel rendered ineffective assistance of counsel because he failed to effectively cross-examine and impeach Government witnesses based on evidence produced by the Government in discovery.  (Mot. at 38–41).

Movant asserts that the Government's witnesses made prior inconsistent statements, or statements inconsistent with other witnesses' statements, regarding when events at issue occurred.

Movant also asserts that the Government's *Brady* disclosures establish that cooperating witnesses fabricated their testimony against Movant to obtain sentence reductions.  To back up these sworn averments, Movant cites to what the Motion has described as an attorney-created inventory—Exhibit 29 to the Motion—of all the Government's exculpatory and impeachment evidence and Jencks Act materials.  Exhibit 29 is just that: a list naming documents, which have been categorized by Government witness.  (ECF No. 3 at 341–347).  The Exhibit List for the Motion (ECF No. 3) states for Exhibit 29 that the "actual documents will be filed under seal." (ECF No. 3 at 3).  As best the Court can tell, that did not occur.[13]  Nor can the Court locate the documents on the public docket.  Nonetheless, Movant cites to Exhibit 29 throughout his Reply.

Even assuming Movant has established deficient performance, Movant failed to show any resulting prejudice.  Movant identifies two specific examples where Casuso or Padron failed to make use of the Government's evidence during cross-examination of the Government's witnesses. First, Movant specifically cites to an example where Warner Broon Benitez Lopez could have been and should have been cross-examined using prior statements that would have undermined Lopez's testimony that he engaged in drug trafficking with Movant from 2004 through 2013 or 2014 (constituting post-2012 evidence of Movant's involvement in the conspiracy).  But as to cross-examination of Lopez regarding Movant's post-2012 involvement in the conspiracy, the Eleventh Circuit summarized the testimony of *multiple* witnesses in finding sufficient evidence of post-2012 involvement, not just Lopez:

> Multiple witnesses testified that Mejia-Duarte and his partner were in fact co-conspirators.  Two witnesses described trafficking with Mejia-Duarte through the partner.  Two witnesses described being present at meetings in which Mejia-Duarte proposed or planned trafficking.  And all this evidence was taken from events that

---

[13]  In the sealed Exhibit List (ECF No. 3), counsel for Movant forecasted his intention to move for leave to file under seal three exhibits, including exhibit 29.  But when he filed the motion for leave (ECF No. 7), it requested permission to file only two of those exhibits under seal (Exhibits 20 and 24); inexplicably, the underlying documents inventoried in Exhibit 29 were never filed.

occurred after February 2012. Mejia-Duarte offers us no reason to view this testimony as "unbelievable on its face."

*Mejia-Duarte*, 780 F. App'x at 734–35 (internal citations omitted). Even if Lopez's testimony had been negated, the record contained *other* additional testimony, acknowledged by the Eleventh Circuit on direct appeal, sufficient to support Movant's post-2012 involvement.

Second, Movant points to the testimony of two witnesses—Walter Montejo Merida and Adolfo Rodriguez Barrientos. According to Movant, the Government's discovery relating to those two individuals would have, if used on cross-examination, impeached those witnesses' testimony that they knew the drugs trafficked were headed to the United States. Again, Movant has failed to establish how cross-examining Merida and Barrientos in the way Movant asserts they should have been cross-examined would have led to a different result. Indeed, as noted above in the Court's analysis of Ground Three, multiple witnesses other than only Merida and Adolfo Barrientos provided testimony that related to importation. Thus, even if those two witnesses' testimony had been negated upon cross-examination in the way Movant advocates for here, sufficient evidence still would have supported his conviction for the reasons stated above.

In short, to the extent Movant has cited to evidence in the record in support of his claim in Ground Six, Movant has failed to establish prejudice. Accordingly, the District Court should **DENY** the Motion with respect to Ground Six.

### 7. Ground Seven – Cross-Examination of Cooperating Witnesses Regarding Sentencing Benefits

In Ground Seven, Movant claims Casuso was ineffective for failing to cross-examine cooperating Government witnesses about the sentencing benefits they received for cooperating against Movant. (Mot. at 42–46). Specifically, Movant claims that Casuso failed to: (i) question those witnesses about the sentences they were facing *before* entering into a cooperation agreement

with the Government; (ii) mention or explain the sentencing guidelines to the Jury; (iii) inform the Jury that the "starting point" guideline sentence for those witnesses, as calculated, was life; (iv) inform the Jury that, through plea deals, the witnesses had minimized exposure to sentencing enhancements that would have resulted in life guideline sentences; (v) suggest that the witnesses were following a "script"; (vi) elicit that the witnesses were falsely testifying against Movant for their own benefit; or (vii) elicit that there had been no judicial involvement in the witnesses' plea negotiations.

Movant's arguments raised in Ground Seven are refuted by the record. To the extent Movant complains that counsel should have ensured that the jury learned about the sentencing benefits expected by the cooperating witnesses, the record conclusively shows that such testimony was elicited first by the Government, then in fact defense counsel further cross-examined the cooperating witnesses about their motivation to testify favorably for the Government. For example, attorney Padron expressly asked Warner Broon Benitez Lopez on cross-examination whether he had been facing life sentences in two different cases prior to agreeing to cooperate. (CR-ECF No. 73 at 36–37).

In all, Ground Seven is nothing more than argument that counsel should have more vigorously cross-examined the Government's cooperating witnesses. Consistent with the rest of the Motion, no legal authority is cited in support of Movant's argument that counsel's performance was unconstitutionally deficient for failing to vigorously question cooperating witnesses about the specific details of their sentencing guidelines, interactions with Government agents and counsel, motions under U.S.S.G. § 5K1, or Rule 35 sentence reductions. The Court is hard-pressed to find that Casuso's and Padron's performance fell below professional standards. Movant has not met his burden of establishing deficient performance.

Moreover, the only prejudice Movant appears to identify in his Motion as to Ground Seven is that if counsel had cross-examined the witnesses as Movant now desires, the witnesses would have appeared more "savvy" to the Jury, as opposed to the Government's portrayal of them as "naïve dupes." (Mot. at 44). But the Jury had already heard similar testimony—the Government had already taken the wind out of the sails during direct examination with respect to whatever questioning Movant had wanted his counsel to engage in: the Government questioned the cooperating witnesses during direct examination as to whether they had agreements that the Government would recommend reductions in their sentences in exchange for their cooperation. (CR-ECF No. 73 at 22–23) (Lopez direct examination); (CR-ECF No. 73 at 55–56) (Zalabria); (CR-ECF No. 74 at 177–178) (Pulgarin); (CR-ECF No. 74 at 232–234) (Barrientos); (CR-ECF No. 74 at 284–285) (Merida). Movant does not explain how he was prejudiced by the failure to portray the Government's witnesses as "savvy" when the Government had already asked them about their cooperation benefits.

Accordingly, the District Court should **DENY** the Motion with respect to Ground Seven.

### 8.    Ground Eight – Honduran Firearms

Movant was arrested at a house used for religious retreats, where the firearms at issue were found in a safe that law enforcement officers unlocked using a key given to Movant by the retreat organizers. Movant challenges Casuso's failure to introduce evidence that would have established that Movant did not illegally possess a firearm at the time of his arrest in Honduras. (Mot. at 47–50). Movant argues that Casuso did not sufficiently investigate this issue, which would have revealed that the firearms were not Movant's.

Movant contends that the Honduran firearm permits or licenses, which Casuso published to the Jury and which reflected that the firearms were registered to Movant's driver and bodyguard

Angel Antonio Quiroz Posados, "would have initially explained the presence of firearm(s) at the religious retreat home and at a minimum, would have allowed Casuso to argue that the guns were lawfully registered, that Angel Antonio Quiroz Posadas was the lawful owner, that these guns did *not* belong to [Movant] and that the firearms were possessed for protection as opposed to drug dealing and murder." (Mot. at 48) (emphasis in original).  Movant asserts that Casuso should have called Posadas as a witness at the trial and put on additional evidence and testimony, including expert testimony from a Honduran firearms expert, that the firearms were lawfully owned, not in or seized from Movant's home, and not owned by Movant.  Movant asserts that "the prejudice to [him] resulting from these failures, was significant." (Mot. at 50).

Movant has not shown deficient performance or prejudice.  The Motion itself expressly recognizes that Casuso *did* publish to the Jury and did cross-examine the Honduran investigative agent regarding the Honduran firearm licenses, which indeed stated that Angel Antonio Quiroz Posadas was the registered owner of the firearms at issue in this case, and not Movant.  (CR-ECF No. 74 at 270–272).  Further, the Motion itself expressly recognizes that Movant employed the registered owner of the firearms, Posadas, for protection and that, on the day of Movant's arrest, *Movant* was in possession of the key to the safe where the firearms were kept: "[O]n the day of Neftali's arrest, one of the retreat organizers provided the key to the safe containing the firearm to Neftali, who in turn[] provided it to law enforcement officers." (Mot. at 47).

Movant has not alleged in Ground Eight a claim that Casuso failed to challenge the Government's evidence regarding ownership and possession of firearms.  Simply, Movant's claim here is that Casuso should have put on cumulative evidence purporting to negate a matter that he otherwise concedes in his Motion.  In this respect, Ground Eight is incoherent.  Movant and his counsel cannot reasonably argue that Casuso deficiently failed to put on evidence that Movant did

not possess firearms at the time of his arrest while advancing sworn averments that Movant possessed the key to the safe where the firearms were kept and gave that key to law enforcement. That is, Movant cannot claim ineffective assistance with respect to actual possession while in the same breath implicitly conceding constructive possession.

Movant has not established deficient performance or prejudice.  The District Court should **DENY** the Motion with respect to Ground Eight.

> ## 9. Ground Nine – Mistrial Based on Comment Regarding Movant's Post-Arrest Silence

Movant's claim in Ground Nine arises from counsel's failure to object and move for a mistrial when a Honduran investigative agent and Government witness—Jose Lopez—purportedly commented at the trial on Movant's invocation of his right to remain silent after Movant was arrested in Honduras.  (Mot. at 51–52).  On the merits, the Government argues that this claim is based on a misunderstanding of law, is based on the false premise that Jose Lopez was a U.S. Government agent, and that Movant has not shown prejudice.

"It is well established that a prosecutor cannot comment on a defendant's post-*Miranda* silence to impeach exculpatory testimony on the ground that the defendant did not explain his conduct at the time of his arrest." *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997) (citing *Doyle v. Ohio*, 426 U.S. 610 (1976)).  "A comment is deemed to be a reference to a defendant's silence if it was the prosecutor's manifest intention to refer to the defendant's silence or if it was of such a character that the jury would 'naturally and necessarily' understand it to be a comment on a defendant's silence." *Id.* (quoting *United States v. Rosenthal*, 793 F.2d 1214, 1243 (11th Cir.), *modified by* 801 F.2d 378 (11th Cir. 1986)).  Notwithstanding, a "single comment alone" does not necessarily constitute a *Doyle* violation where the Government does not attempt to use

the improper comment to impeach a defendant.  *United States v. Stubbs*, 944 F.2d 828, 835 (11th

Cir. 1991).

> The testimony in question is as follows:
>
> Q. Did you talk to Mr. Mejia-Duarte about these guns?
> A. Yes.
> Q. What, if anything, did he say?
> A. He didn't really say anything about the weapons.  We only asked him if they
> were his weapons.  He didn't really say much about the weapons.
> Q. Did you ask him anything as far as whether he wanted to make a statement or
> anything like that?
> A. Yes.  At the time that we arrested him he told us that he had a problem here in
> the United States and that he was not going to speak to us.

(CR-ECF No. 74 at 269).  Assuming without deciding that the Fifth Amendment and *Miranda*

would be applicable to Movant's arrest in Honduras by Honduran authorities, no unconstitutional

post-*Miranda* comment on silence occurred in this case.  The foregoing testimony does not reflect

the prosecutor's manifest intention to refer to Movant's post-arrest silence for the purpose of

impeaching exculpatory testimony.  Nor can the testimony be reasonably understood as naturally

and necessarily commenting on Defendant's silence to equate that silence with guilt.  Simply put,

there were no grounds for a mistrial based on the testimony set forth above and thus, Movant has

not identified deficient performance because no constitutional violation occurred.  Trial counsel is

not constitutionally ineffective for failing to make unmeritorious motions.

Accordingly, the District Court should **DENY** the Motion with respect to Ground Nine.

### 10. Ground Ten – Mistrial Based on Comment Regarding Bribe

In Ground Ten, Movant asserts that Casuso rendered ineffective assistance of counsel when

he failed to move for a mistrial when Honduran investigative agent and Government witness, Jose

Lopez, testified on redirect examination that Movant might have paid a bribe to obtain a gun permit

in Honduras.  (Mot. at 53).  Movant claims this testimony was legally improper and inadmissible

character evidence.  On the merits, the Government asserts that the testimony in question did not

unambiguously relate to Movant and that Movant has not satisfied either prong of *Strickland*.  The

full testimony at issue is as follows:

> REDIRECT EXAMINATION
> BY MR. NORKIN:
> Q. Agent Lopez, I am going to put these two on the screen again.  This second
> document, do you know whether it's a real license or not?
> A. I don't know.  But the rifle in Honduras, this is a forbidden weapon.
> Q. And so what's your understanding of why it is that someone may be able to
> carry around something that looks like a government document even though there
> is a forbidden – even though there is an illegal gun?
> A. I don't know how to explain that.  Perhaps money was paid under the table to
> obtain that.  I wouldn't know that.
> MR. NORKIN: No further questions.
> THE COURT: Thank you.  You may step down.

(CR-ECF No. 74 at 272:23–273:12).

As the Government notes, it is not at all clear from the foregoing testimony that Agent

Lopez was, as Movant contends, accusing *Movant* of having paid a bribe.  Indeed, the agent had

testified on cross-examination that the guns referenced in the trial were not registered to Movant.

The Motion has not identified in Ground Ten any actual prejudice resulting from the foregoing

testimony.

In short, Movant does not state a claim of ineffective assistance of counsel in Ground Ten.

Accordingly, the District Court should **DENY** the Motion with respect to Ground Ten.

### 11.    Ground Eleven – Failure to Object to Evidence from Before February 2012

In addition to being procedurally barred, the Court finds that Ground Eleven fails on the

merits.  Movant asserts that Casuso rendered ineffective assistance of counsel by failing to object

to the admission of evidence of uncharged crimes and other acts that occurred prior to February

27, 2012, the date of the Honduras-United States Extradition Treaty.  According to Movant,

Casuso's failure to object permitted the Jury to consider evidence from before February 2012 when he could only be convicted of crimes committed after February 2012.  (Mot. at 54–57).

This claim is vague, challenging generally all or most of the admitted evidence without specificity, and is otherwise foreclosed by the record.  Plainly, Movant's assertion that "Casuso never made a pre-trial request for this pre-2012 evidence" to be excluded is incorrect.  (Mot. at 54).  Casuso filed a pretrial motion to limit the presentation of evidence at trial to only events that occurred after February 2012.  (CR-ECF No. 31).  The motion was denied, in part, when Chief Magistrate Judge Simonton entered an Order prior to the trial, which stated:

> [The doctrine of specialty], however, does not restrict the evidence that the Government may introduce to prove that Mr. Mejia Duarte was involved in a conspiracy as of that date.  In this regard, the Government may introduce evidence of prior activities of Mr. Mejia Duarte that would prove his involvement in the crime for which he was extradited.  In this regard, the Government may introduce evidence of the prior activities only as proof of Mr. Mejia Duarte's involvement in the conspiracy as of February 12, 2012.

(CR-ECF No. 53 at 6).

In the same claim, Movant asserts that Casuso "improperly agreed to the admissibility of the seized Glock pistol and automatic rifle, threats against other inmates and Neftali's inculpatory post-arrest statements," all of which necessarily occurred *after* 2012.  (Mot. at 55).  The claim is incomprehensible, essentially challenging nearly all the evidence developed at trial in general fashion.  Notwithstanding, Movant next complains that Casuso "only objected *pre-trial* to the admission of the designated acts of violence," and that he failed to renew those objections at trial.  (Mot. at 55) (emphasis in original).  But in ruling on Movant's motion for judgment of acquittal under Rule 29, based in part on the purported lack of post-2012 evidence, the District Court noted that the pre-2012 evidence was all admissible evidence under Rule 404(b).  (CR-ECF No. 74 at 319).  Movant's post-conviction counsel cannot now argue the merits of the Court's evidentiary

rulings, wrapped up within an ineffective assistance of counsel claim.  In any event, and as noted throughout, Casuso urged the Jury, in both his opening statement and his closing argument, to focus on only evidence from after 2012.  Movant has advanced no case for the proposition that failure to renew pretrial objections is deficient, and the District Court's ruling at the close of evidence—that all was admissible—likewise forecloses Movant's ability to show deficient performance.

In all these respects, Movant has failed to establish deficient performance because the asserted deficiency is contradicted by the record.  Accordingly, the District Court should **DENY** the Motion with respect to Ground Eleven.

### 12.   Ground Twelve – Insufficient Motion for Judgment of Acquittal

In Ground Twelve, Movant asserts that Casuso rendered ineffective assistance of counsel by failing to make a more legally sound motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Government's case-in-chief and at the close of all the evidence.  (Mot. at 58–60).  Movant argues that Casuso's Rule 29 motion was insufficient because it focused on the lack of post-2012 evidence instead of on the lack of evidence of importation into the United States.  Movant also challenges Casuso's failure to timely file a motion for new trial.

Movant has not established deficient performance.  Counsel's Rule 29 motion accorded with his strategy at trial, noted throughout, to focus the defense on the lack of post-2012 evidence. Moreover, the Eleventh Circuit upheld Movant's conviction on appeal after assessing the sufficiency of the evidence.  Indeed, habeas courts have found no ineffective assistance of counsel based on claims of inadequately argued Rule 29 motions where the appellate court found the evidence sufficient to support the conviction on direct appeal:

> Regardless, Lehr's alleged failure to adequately argue the issues referred to above did not prejudice Fard because the Court would have denied the motion for

> judgment of acquittal even if these arguments were raised as Fard wished. *See Johnson v. United States*, No. 2:09-cv-647-JES-SPC, 2012 WL 2996593, at \*5-6 (M.D. Fla. July 23, 2012) (holding that there was no ineffective assistance of counsel when there was no reasonable probability that a sufficiency of the evidence challenge would have prevailed). The Eleventh Circuit agreed with this Court that the government's evidence was sufficient to uphold Fard's conviction. *Fard*, 805 F. App'x at 620. The appellate court also determined that a jury could conclude that the agencies did not receive the benefit of their bargain, and that Fard undermined the purpose of the programs. *Id.* None of Fard's arguments would have altered the Court's conclusion that Fard's conviction should be upheld.

*Fard v. United States*, No. 8:17-CR-131-VMC-SPF, 2022 WL 3042437, at \*6 (M.D. Fla. Aug. 2, 2022), *certificate of appealability denied*, No. 22-13212-F, 2023 WL 3239528 (11th Cir. Feb. 14, 2023). So too should the result be here, where the Eleventh Circuit found the evidence sufficient to support Movant's conviction on direct appeal.

Movant has failed to establish deficient performance. Accordingly, the District Court should **DENY** the Motion with respect to Ground Twelve.

### 13.    Ground Thirteen – Cross-Examination of Pulgarin

This claim is frivolous or unintelligible—it is hard to say which. Movant quotes a passage of cross-examination of cooperating witness Pulgarin, wherein Casuso asked the witness if he recalled that another prosecutor had essentially accused the witness of being a liar. Movant first alleges that Casuso deficiently failed to pursue the line of impeachment with the introduction of collateral evidence; but in the same breath, Movant argues that because there is *no* such evidence that the accusation even occurred, Casuso was deficient for having pursued it. The Government correctly notes this claim is too frivolous for serious consideration.

Accordingly, the District Court should **DENY** the Motion with respect to Ground Thirteen.

### 14.    Ground Fourteen – Failure to Communicate a Plea Deal

Movant asserts that Casuso rendered ineffective assistance of counsel when he failed to disclose and present a plea deal to Movant prior to its expiration. (Mot. at 63–65). Specifically,

Movant asserts that on December 8, 2017, Casuso rejected a plea deal first offered by the Government on November 7, 2017.  Movant avers that he "never received or reviewed any plea agreement with Casuso prior to trial" but also avers that Casuso advised Movant of a plea deal which Movant rejected in favor of further plea negotiations.  (Mot. at 63).  Movant otherwise complains that Casuso failed to provide him with copies of the Government's discovery in his case, neglected to discuss the sentencing guidelines with Movant, and misled Movant regarding the applicability of the Honduran extradition treaty.

Ineffective assistance of counsel claims in the plea-bargaining context are governed by *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citation omitted).  In *Frye*, the Supreme Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." *Id.* at 145 (alteration added); *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam).  To demonstrate prejudice, a petitioner must show that, but for the ineffective assistance of counsel, a reasonable probability existed that "he would have accepted the lapsed plea but also a reasonable probability that the prosecution would have adhered to the agreement and that it would have been accepted by the trial court." *Id.* at 150 (alteration added).

Movant has not alleged any plea offer that counsel failed to communicate.  Rather, Movant acknowledges that Casuso *advised him of a plea offer of 17 years*, which could be reduced to 11 years with cooperation.  Movant's Motion expressly states, in response to being informed of the Government's plea deal, that Movant "told Casuso to get the best deal he could.  [Movant] did not reject cooperation but explained that he could not offer any pro-active cooperation and could only cooperate by providing historical information for activities that occurred prior to 2009." (Mot. at

63).  Though Movant claims generally in his Motion that if he knew then what he knows now regarding what evidence he was facing he would have pled guilty, he expressly recognizes that Casuso *did* communicate the Government's plea offer to Movant.  The Motion contains no allegation of any uncommunicated plea deal and therefore no deficient performance for purposes of *Frye*.

Accordingly, Movant has not stated a claim with respect to the alleged uncommunicated plea offer described in the Motion.

Movant's Reply asserts that a *second* plea deal, not referenced in the Motion, was never communicated to Movant.  Movant's allegations regarding this second, uncommunicated plea offer have been advanced for the first time in Movant's Reply and need not be considered.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'"); *ripKurrent LLC v. Richard Ballard IRA LLC*, 530 F. Supp. 3d 1281, 1297 (S.D. Fla. 2021) (applying same in district court motion practice).  Nor has Movant met his burden of showing prejudice.  Movant avers in his affidavit submitted in support of his Reply that he would have pled guilty and accepted a plea deal resulting in a 17-year sentence.  (ECF No. 17-1 at ¶ 65).  To the extent Movant's Reply affidavit can be read as averring that Movant would have accepted the second, uncommunicated plea deal had he known about it, the assertion is conclusory and contradicted by later averments made in that same affidavit—specifically, his assertions of innocence.  Movant attests that he had publicized his permanent retirement (*i.e.*, withdrawal) from the narcotics trafficking conspiracy at the end of 2008 or early 2009 in anticipation of the birth of his daughter, which was before the conspiracy period charged in the Indictment.  (ECF No. 17-1 at ¶¶ 40–48, 55–61).  That is, Movant has asserted in his Reply affidavit both that he is actually

innocent of the conspiracy charged but also that he would have pled guilty to that conspiracy. Thus, even if the Court were to consider allegations of a second uncommunicated plea deal and were to accept that Casuso did not communicate that plea offer to Movant, the Court rejects Movant's irreconcilable sworn-to statements that he would have pled guilty to a crime he swears he did not commit.[14]

Accordingly, the Court finds that Movant has not shown he would have accepted the alleged second uncommunicated plea offer referenced in the Reply and that, as a result, Movant has not shown prejudice by Casuso's deficient performance to the extent there even was deficient performance. No evidentiary hearing is required here. *See Rosin v. United States*, 786 F.3d 873, 877–79 (11th Cir. 2015) (finding that the district court did not abuse its discretion in denying the movant's § 2255 motion without an evidentiary hearing on a claim that counsel had failed to pursue plea bargaining, because the record negated a finding of prejudice: the movant failed to allege in his motion that he would have accepted a guilty plea and the record instead reflected that the movant insisted on his innocence).

For all these reasons, the District Court should **DENY** the Motion to Vacate with respect to Ground Fourteen.

### 15.    Ground Fifteen – Movant's Right to Testify

In Ground Fifteen, Movant alleges that Casuso failed to discuss with Movant whether Movant should testify at trial. (Mot. at 66–68). According to Movant, Casuso did not fully discuss the Government's evidence with him, bring discovery materials to FDC to review with Movant, or advise Movant of his right to testify at the trial. Movant avers that Casuso instead told Movant that he could not testify. Movant faults Casuso for not requesting the Court to colloquy Movant

---

[14] In its Response in opposition to Movant's evidentiary hearing, the Government characterizes this second plea offer as being worse for Movant than the first, rejected offer. (ECF No. 19 at 5 n.4).

regarding the voluntary waiver of his right to testify.  He asserts that he has now been fully advised of his right to testify at trial and that he would have been prepared to refute the cooperating witnesses' testimony.

The Government would rely on the affidavit of Attorney Casuso and argues that Movant has not established deficient performance.  The Government further avers that Movant has not established prejudice, because his testimony likely would have harmed him.

"It is clear that a criminal defendant has a constitutional right to testify in his own behalf at his trial." *United States v. Teague*, 953 F.2d 1525, 1530 (11th Cir. 1992); *see also Gallego v. United States*, 174 F.3d 1196, 1198 (11th Cir. 1999).  The right is a fundamental one personal to the defendant and cannot be waived by the trial court or by defense counsel. *Teague*, 953 F.2d at 1532.  "[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland*[.]" *Id.* at 1534.

Movant has presented his own self-serving statement that his attorney failed to inform him of his right to testify.  The relevant averment in Movant's verified Motion is: "Casuso never had any discussion with Neftali regarding him testifying or not, but simply told Neftali you can't testify." (Mot. at 66).  In support of his Reply, Movant also submitted an affidavit in which he again asserted that Casuso did not explain he had a right to testify:

> 15. Casuso also never explained to me that I had a right to testify in my own defense at trial.  On the contrary, Casuso told me repeatedly not to say a word during my trial and to be silent and to show no emotions.  Casuso is also lying in his declaration when he states the [District Court] explained my right to testify at trial in my own defense to me prior to trial, but that I declined.  That never happened.  I did not speak or read English.  I did not know and was not even remotely familiar with the laws and legal procedures in the United States and had only been in the United States for a few months when all of this occurred.

(ECF No. 17-1 at ¶ 15).  Movant signed these statements under penalty of perjury.  His sworn testimony that Casuso did not advise him of his right to testify is not clearly improbable.  Indeed,

failing to inform Movant of his right to testify, if true, would have constituted deficient performance.  When the record is unclear as to what took place, it is presumed that Movant's attorney exercised reasonable professional judgment, *Chandler*, 218 F.3d at 1315 n.15, but in the absence of evidence contradicting Movant's statements, Movant may be able to establish deficient performance.[15]  The Court assumes deficient performance—that Movant is correct that Casuso failed to inform Movant of his right to choose whether to testify at trial—for purposes of deciding the Motion.

Notwithstanding, Movant has failed to establish prejudice and thus his claim fails.  Prejudice requires a "substantial," not merely "conceivable," likelihood of a different result.  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  In making this determination, courts "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.  "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.  Movant states in his Motion that his testimony in three areas would have impeached the Government's cooperating witnesses and refuted Movant's guilt.  The testimony identified in the Motion amounts to no more than a denial of Movant's involvement in the conspiracy by way of testimony intended to impeach or refute the cooperating witnesses' testimony.  Though Movant raises a withdrawal defense in his Reply affidavit and attests to specific facts in support of that defense, his assertion that he engaged in criminal activity until no later than 2009 when he withdrew from the conspiracy, raised in a self-

---

[15]  Movant has in fact advanced evidence that contradicts his own statements: in support of Ground Fourteen, he swears that he would have taken a plea and admitted his guilt, while simultaneously swearing that he would have testified and explained his actual innocence to the Jury if only Casuso had explained his right to testify.  Both of these statements cannot be true.  And though the Motion is filed by counsel, the undersigned has very liberally construed Movant's allegations and averments in finding that for purposes of this analysis, deficient performance may be assumed.

serving affidavit filed in support of his Reply, conflicts with the testimony of multiple witnesses

who testified at trial as to Movant's post-2012 involvement in the conspiracy:

> Multiple witnesses testified that Mejia-Duarte and his partner were in fact co-conspirators. Two witnesses described trafficking with Mejia-Duarte through the partner. Two witnesses described being present at meetings in which Mejia-Duarte proposed or planned trafficking. And all this evidence was taken from events that occurred after February 2012.

*Mejia-Duarte*, 780 F. App'x at 734–35 (internal citations omitted). Indeed, Government counsel

explained during closing arguments that the Government's case was based on the testimony of

cooperating witnesses who did not all know one another but whose testimony nonetheless was

consistent and corroborative of one another. *See* (CR-ECF No. 74 at 322:19–24) ("You heard

from six witnesses, people the defendant chose to be his partners in the narcotics business. They

were six people who hadn't spoken to each other since they were arrested. Sometimes they didn't

even know each other. And yet they told remarkably similar stories about what happened, their

interactions with the defendant, the other coconspirators."). And as noted throughout, these

witnesses were subject to cross-examination by Casuso and Padron, during which the witnesses

were questioned about their cooperation benefits. While a defendant's testimony "must be

considered of prime importance" when determining whether the defendant was the person who

committed the crime, *Nichols v. Butler*, 953 F.2d 1550, 1554 (11th Cir. 1992) (en banc), the fact

remains that ample evidence supported Movant's conviction. If anything, Movant ran the risk of

the Jury concluding the *opposite* of his testimony if he had testified. *See Feliciano v. United States*,

500 F. App'x 905, 909–10 (11th Cir. 2012) (quoting *Atkins v. Singletary*, 965 F.2d 952, 961 n.7

(11th Cir. 1992)) ("[D]espite defense counsel's vigorous cross-examination, the jury still elected

to believe [the co-conspirator's] testimony about [movant's] role in the conspiracy. Furthermore,

to the extent [movant] intended to profess his innocence, there is little to suggest that the jury

would have believed his testimony over that of his co-conspirators, particularly given the other evidence of his guilt. As we have long emphasized, a defendant who testifies runs the risk that a jury will both disbelieve his testimony and 'conclude that the opposite of his testimony is true.'").

Rather, the trial transcripts reflect that the Jury returned a guilty verdict in under 50 minutes and that the Eleventh Circuit affirmed the sufficiency of the evidence on direct review without reservation. No evidentiary hearing on this issue is needed here. *See Miller v. United States*, 562 F. App'x 838, 844 (11th Cir. 2014) ("Because [movant] cannot demonstrate prejudice, an evidentiary hearing was unnecessary to resolve the factual issues of whether [movant's] attorney in fact advised him of his right to testify at trial."); *Feliciano*, 500 F. App'x at 910 ("Because the record conclusively showed that [movant] could not demonstrate that he was prejudiced by trial counsel's performance, the district court did not abuse its discretion in declining to hold an evidentiary hearing."); *cf. Geer v. United States*, 354 F. App'x 417, 420 (11th Cir. 2009) (with respect to counsel's alleged multiple refusals to permit the defendant to testify: remanding the case on collateral review to conduct an evidentiary hearing on whether the movant was refused the opportunity to testify because sufficiency of the evidence was a "close call" on direct review and the movant's testimony may have proved that he had not participated in the conspiracy in light of the circumstantial evidence linking the movant to the conspiracy).

In light of the testimony from other witnesses about Movant's involvement in the conspiracy—testimony that sufficiently established his guilt and that the Jury credited despite cross-examination by Casuso and Padron—the fact that Movant did not testify to refute his involvement is insufficient to undermine confidence in the trial's outcome. *See Strickland*, 466

U.S. at 694.[16]  Movant's claim of ineffective assistance of counsel thus fails, and no evidentiary hearing is necessary, because Movant cannot establish the prejudice prong of *Strickland*.

For all these reasons, the District Court should **DENY** the Motion to Vacate with respect to Ground Fifteen.

### 16.    Ground Sixteen – Defense Closing Argument

In Ground Sixteen, Movant challenges Casuso's closing argument as impermissibly short and because it failed to articulate a theory of defense.  (Mot. at 69–70).

As with Ground Four (Casuso's opening statement), the District Court may dispose of Ground Sixteen with short shrift because Movant has not shown deficient performance or prejudice.  Regarding deficiency, Movant has not shown that Casuso's closing argument was so deficient such that it was constitutionally infirm.  Movant again fixates on the length of the summation in terms of trial transcript pages.  But the transcript reflects that Casuso's closing argument accorded with the trial strategy he articulated during opening statements: Casuso's closing argument focused on the dates of the conspiracy charged and again implored the Jury to focus on the dates of the Government's evidence.  (CR-ECF No. 74 at 332).  Casuso also focused

---

[16]  With respect to the specific testimony Movant asserts he was prepared to offer, Movant first contends he would have testified that he "did not know or ever conduct any narcotics-related business activity with any of the six (6) cooperating Government witness who testified against him at trial."  (Mot. at 67).  But whether Movant actually knew or conducted drug transactions with those individuals would not necessarily have negated Movant's involvement in the conspiracy charged.  *See United States v. Garcia*, 405 F.3d 1260, 1269–70 (11th Cir. 2005) ("To satisfy this burden, the government need not prove that the defendants knew all of the detail or participated in every aspect of the conspiracy.  Rather, the government must only prove that the defendants 'knew the essential nature of the conspiracy.'").  The Eleventh Circuit noted on direct appeal that witnesses testified they had trafficked in narcotics with Movant's co-conspirator and partner and that the witnesses were present at meetings in which Movant planned or proposed drug trafficking.  Second, Movant asserts that he "would have also refuted all of Warner Broon Lopez's absurd claims, including that he, Lopez[,] lived in this home in Honduras with his wife and family for a period of time in 2006."  (Mot. at 67).  This is no more than a general denial to impeach the testimony of one of six of the Government's witnesses.  And third, Movant avers that he would have "denied and presented witnesses and documentation to confirm that he did not travel with 7-10 armed bodyguards, that he did not own or possess a machine pistol, that he had no involvement in a drug war between Jose Pena and Jose Perez and most importantly, that he had absolutely no involvement whatsoever in the death and killing of Jose Pena."  (Mot. at 67).  Again, the Eleventh Circuit expressly noted on direct appeal that this testimony did not prejudice Movant: "[T]here was no real risk that the jury convicted Mejia-Duarte on this basis, instead of for the crime for which he was indicted and tried."  *Mejia-Duarte*, 780 F. App'x at 734.

the Jury on the credibility of the Government's various cooperating witnesses and their motives for testifying. Movant has failed to show how the closing statement was constitutionally deficient.

And beyond not citing any law in support of his claim that Casuso's closing argument was the product of deficient performance, Movant has not identified any resulting prejudice. Movant asserts in conclusory fashion that Casuso's closing "virtually assured [his] conviction." (Mot. at 70). But, even if the Court assumed that Casuso's closing statement were deficient, Movant has not met his burden of showing how a nondeficient closing statement would have led to a different result. Again, the Eleventh Circuit affirmed Movant's conviction after assessing the sufficiency of the evidence against him.

For all these reasons, the District Court should **DENY** the Motion to Vacate with respect to Ground Sixteen.

### 17.    Ground Seventeen – Prosecution's Rebuttal Argument

In Ground Seventeen, Movant alleges that Casuso rendered ineffective assistance of counsel when he did not object to the Government's rebuttal closing argument, which Movant claims went outside the scope of Casuso's purportedly insufficient closing argument. (Mot. at 71–72). Movant takes issue with Government counsel discussing the testimony of all six cooperating witnesses during rebuttal closing argument when Casuso had, according to Movant, only mentioned three witnesses. Movant further asserts that Government counsel inappropriately discussed Movant's possession of a "5-7-N firearm," a Colombian assassin named Kevin, and Movant's threats to Warner Broon Lopez Benitez.

Apart from, again, fixating on the length of closing arguments in terms of trial transcript pages, Movant has cited no law in support of his claim that Casuso's failure to object to the Government's rebuttal closing argument was the product of deficient performance. In any event,

the specific rebuttal closing argument complained of is clearly a response to Casuso's arguments in his summation.   Casuso argued against the credibility of the Government's cooperating witnesses during his closing argument.   In response, Government counsel began his rebuttal argument stating that the Government and the defense "can agree that the people that you heard from who are part of the conspiracy are not people you should just take your word on."  (CR-ECF No. 74 at 337).  Government counsel argued to the Jury that the Government had presented other evidence to aid the Jury in evaluating how truthful the Government's witnesses were despite their status as convicted cooperators, including consistent testimony across witnesses regarding the "Five-SeveN" firearm.  (CR-ECF No. 74 at 340).  The reference to the Colombian assassin Kevin in the Government's rebuttal closing argument appears to have been a response to Casuso's assertion that Movant's employment of bodyguards should not weigh in favor of guilt.  (CR-ECF No. 74 at 332).  And as the Government notes, references in closing arguments to threatening witnesses goes to consciousness of guilt.

But more importantly, Movant has not identified any resulting prejudice.  Rather, Movant asserts in conclusory fashion that the Government's rebuttal argument was highly prejudicial. However, Movant has not substantiated let alone explained how Movant would have had a different result if Casuso had objected.  Indeed, the District Court instructed the Jury: "As I said before, you must consider only the evidence that I admitted in the case.  Evidence includes the testimony of witnesses and the exhibits admitted.  But anything the lawyers say is not evidence and isn't binding on you."  (CR-ECF No. 74 at 345).  And the Eleventh Circuit affirmed Movant's conviction after assessing the sufficiency of the evidence adduced at trial.  Even assuming deficient performance, Movant has not shown prejudice.  *See Smith v. United States*, 379 F. App'x 811, 813 (11th Cir. 2010) (internal citation omitted) ("Even if we were to assume that the failure to object

constituted deficient performance, there is no evidence of prejudice.  The district court instructed the jury that the arguments of counsel were not evidence, and the government presented ample proof that Smith, Wade, and Culberson possessed illegal paraphernalia and precursor materials sufficient to manufacture a large quantity of methamphetamine."); *Smith v. Pulaski SP Warden*, 809 F. App'x 712, 718 (11th Cir. 2020) (finding that, even if the court had performed a *de novo* review on the petitioner's claim that defense counsel failed to object to highly inappropriate comments by the prosecutor during the rebuttal closing argument, the petitioner still failed to show prejudice because (i) the trial court instructed the jury that closing arguments are not evidence, (ii) the petitioner was acquitted of more serious charges, and (iii) overwhelming evidence supported the conviction).

For all these reasons, the District Court should **DENY** the Motion to Vacate with respect to Ground Seventeen.

### 18.    Ground Eighteen – All Other Pretrial and Trial Errors Combined

Ground Eighteen raises a host of complaints about counsel's failures without meaningfully explaining their connection in this claim.  Movant asserts that Casuso rendered ineffective assistance of counsel because he did not file proposed voir dire questions, proposed jury instructions, a sentencing memorandum, character letters, and other evidence for sentencing, and because he did not call witnesses or present evidence and argument at sentencing to seek a sentence other than life imprisonment.  (Mot. at 73–74).  None of these claims state a basis for relief.

First, Movant's claim that Casuso rendered ineffective assistance of counsel when he did not file proposed voir dire questions or jury instructions is entirely conclusory, cites to no legal authority in support of finding deficient performance, and identifies no prejudice whatsoever.

Second, Movant's claim that Casuso rendered ineffective assistance of counsel when he did not file a sentencing memorandum is similarly without merit. "Failing to file a sentencing memorandum is not ineffective, when counsel files objections to a PSR." *Klatch v. United States*, No. 8:17-CR-135-T-27JSS, 2019 WL 6051438, at *10 (M.D. Fla. Nov. 15, 2019). As noted above, Casuso filed objections to the presentence investigation report on Movant's behalf. *See* (CR-ECF No. 79).

Third, Movant has not established ineffective assistance of counsel based on Casuso's failure to file character letters and put on other evidence at sentencing. With respect to this impeachment evidence, identified above in Ground Six, Movant's assertion amounts to a claim that Casuso was ineffective because he did not relitigate the Jury's finding of guilt at the sentencing hearing. With respect to character evidence, the assertion that Movant would not have received a sentence of life imprisonment is speculative and unsubstantiated. Movant has identified no case finding constitutionally ineffective assistance of counsel based on counsel's decision not to put on character evidence at sentencing.

For all these reasons, the District Court should **DENY** the Motion to Vacate with respect to Ground Eighteen.

## IV.    EVIDENTIARY HEARING

"A petitioner is entitled to an evidentiary hearing if he alleges facts which, if true, would warrant habeas relief." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted). On the other hand, a district court "is not required to hold a hearing when it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." *Kight v. Singletary*, 50 F.3d 1539, 1547 n.21 (11th Cir. 1995) (citing *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991)) (internal quotation marks omitted). Here, the issues

presented can be resolved based on the record before the Court.  Indeed, because the Court can "adequately assess [Movant's] claim[s] without further factual development[,]" Movant is not entitled to an evidentiary hearing.  *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V.   CERTIFICATE OF APPEALABILITY

A Certificate of Appealability shall issue only when the movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Here, the undersigned finds that Movant has not made a substantial showing of the denial of a constitutional right.  Nor has Movant raised issues that reasonable jurists would find debatable.  Accordingly, the undersigned does not recommend that a certificate of appealability issue in this case.

## VI.   CAUTIONARY INSTRUCTION REGARDING *CLISBY* RULE

The Court is mindful of its obligations under *Clisby v. Jones* to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby v. Jones*, 960 F.2d 925, 935–36 (11th Cir. 1992); *Rhode v. United States*, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that *Clisby* applies to § 2255 proceedings).  However, *Clisby* does not require consideration of claims or arguments raised for the first time in objections to a report and recommendations.  As noted above, Movant has amended his claims and advanced new evidence in his Reply.  If Movant attempts to raise arguments or further factual support for his claims in objections to this Report and Recommendations, the District Court should exercise its broad discretion and refuse to consider the arguments not raised before the magistrate judge in the

60

first instance.  *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge).  Further, where a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein, all arguments and claims were considered and found to be devoid of merit.

## VII.   RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that:

(1)   Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct (ECF No. 1) should be **DENIED**.

(2)   This case should be **CLOSED**.

(3)   No Certificate of Appealability should issue.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, on this 23rd day of January, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable K. Michael Moore
Counsel of record